UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| JACOB MORLEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:24-CV-35-TAV-JEM |
| MATT PATTERSON, JON DULA, MITZIA WADDILL, and ALEX STEWART, | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a pro se complaint for violation of 42 U.S.C. § 1983 alleging that during his confinement in the Carter County Detention Center ("Jail"): (1) Captain ("Cpt.") Matt Patterson, Sergeant ("Sgt.") Jon Dula, and former deputy jailer Alex Stewart[1] failed to protect him from an inmate; (2) Stewart and Sgt. Dula used excessive force against him; and (3) Head Nurse Mitzia Waddill refused to give him a blood test [Doc. 2]. Cpt. Patterson, Sgt. Dula, and Stewart filed a motion to dismiss or, in the alternative, for summary judgment alleging that Plaintiff failed to exhaust his available administrative remedies regarding his failure to protect and excessive force claims against them prior to filing this action [Doc. 14] and a memorandum in support of that motion [Doc. 15]. Plaintiff did not file a timely response to this dispositive motion but instead filed a motion

---

[1] Plaintiff names this defendant as "Alex Stewart" [Doc. 2, pp. 1, 3]. But in the substantive allegations of the complaint, he refers to a jail official with the last name "Stuart" and sometimes, but not always, marks out this individual's name and replaces it with "Alex Stewart" [*Id.* at 5]. Thus, liberally construing the complaint in Plaintiff's favor, the Court assumes that all mentions of "Stuart" in Plaintiff's complaint refer to Defendant Stewart.

seeking discovery of camera footage and incident reports [Doc. 18]. However, after the Court notified Plaintiff that the Court considered Defendants' motion to seek summary judgment [Doc. 20], Plaintiff filed an unsworn response in opposition to that motion [Doc. 21]. Defendants filed a reply [Doc. 22].

For the reasons set forth below, (1) Plaintiff's motion for discovery [Doc. 18] will be **DENIED**; (2) Stewart, Cpt. Patterson, and Sgt. Dula's motion for summary judgment [Doc. 14] will be **DENIED in part without prejudice** as to Cpt. Patterson and **GRANTED in part** only as to Stewart and Sgt. Dula; and (3) Plaintiff's claims against Nurse Waddill will be **DISMISSED** because they fail to state a plausible claim for § 1983 relief.

I.  MOTION FOR DISCOVERY

As set forth above, after Cpt. Patterson, Sgt. Dula, and Stewart filed their motion for summary judgment and memorandum asserting that Plaintiff failed to exhaust his administrative remedies for his claims against them prior to filing this action [Docs. 14, 15], Plaintiff did not timely respond. Instead, Plaintiff filed a motion seeking discovery of camera footage and incident reports, which he asserts will "prove multiple claims beyond doubt" [Doc. 18, p. 2]. Cpt. Patterson, Sgt. Dula, and Stewart filed a response to Plaintiff's motion for discovery in which they state (1) that the discovery items Plaintiff requests in this motion have no relevance to their pending motion for summary judgment; (2) that Plaintiff has not provided them with initial disclosures; and (3) that they do not have the requested incident reports but have a substantial amount of video footage that they could make available for Plaintiff to view [Doc. 19, pp. 1–2].

2

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). Where a district court denies a request for discovery in the face of a motion for summary judgment, the Sixth Circuit will consider the following factors in determining whether this was an abuse of discretion: (1) when the party seeking discovery learned of the discovery issue, (2) how further discovery would affect the summary judgment ruling, (3) the length of the discovery period, (4) whether the moving party was dilatory, and (5) whether the adverse party was responsive. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). The primary consideration is whether the moving party diligently pursued discovery. *Id.* However, "[a] district court does not abuse its discretion when, as here, granting a party's request for additional discovery 'would not have changed the ultimate result.'" *Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808 F. App'x 338, 346 (6th Cir. 2020) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995)).

Given the early stage of this litigation, Plaintiff promptly sought the discovery at issue. Nevertheless, as the camera footage and incident reports have no relevance to the pending motion for summary judgment [Docs. 14, 15], or whether Plaintiff's complaint adequately states a claim for § 1983 relief against Nurse Waddill, providing Plaintiff with the requested discovery items would not change the result of the instant memorandum opinion and order. Moreover, the Court is not the vehicle through which Plaintiff generally obtains discovery, and he may now seek the requested discovery items from Cpt. Patterson without the Court's involvement.

As such, Plaintiff's motion for discovery [Doc. 18] is **DENIED without prejudice**.

II.     **MOTION FOR SUMMARY JUDGMENT**

    A.     **Background**

In his sworn complaint, which the Court considers an affidavit for purposes of summary judgment, *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (providing that a complaint signed under penalty of perjury "carries the same weight as would an affidavit for the purposes of summary judgment"), Plaintiff claims in relevant part that, even though Plaintiff and an inmate named Jason Berry previously had a "no contact/keepaway" order in the Carter County Jail, Inmate Berry was moved into Plaintiff's unit [Doc. 2, p. 4]. Plaintiff told Officer Anders and other officers that Inmate Berry was threatening to kill him and asked Officer Anders if Inmate Berry could be moved because of their incompatibility and the threats, and Officer Anders stated that he would talk to Cpt. Patterson about it [*Id.*]. Officer Anders then told Plaintiff that Cpt. Patterson had declined to move Inmate Berry and stated that Plaintiff "would be okay" [*Id.*]. Plaintiff then asked Officer Anders if Plaintiff and Inmate Berry could be kept from being "out at the same time," and "they said [Plaintiff] would be protected and safe" [*Id.*].

On the next shift, Plaintiff asked Deputy Hamm if Plaintiff could speak to Sgt. Singletary about this issue, but Sgt. Singletary was busy, so Plaintiff wrote a paper grievance telling Sgt. Singletary that Inmate Berry was still threatening to kill Plaintiff and requesting that Sgt. Singletary ask Cpt. Patterson to change his mind and move Inmate Berry, which he gave to Deputy Hamm to give to Sgt. Singletary [*Id.*]. But "[Plaintiff] was ignored" [*Id.*].

4

After Plaintiff came out of lockdown, he asked Sgt. Dula to change the recreation times so that Plaintiff and Inmate Berry would not be out at the same time [*Id.* at 5]. As Sgt. Dula "gave [Plaintiff] his word," Plaintiff assumed that Inmate Berry would not be out when Plaintiff was given recreation time [*Id.*]. But when Stewart subsequently let Plaintiff out for recreation, Inmate Berry attacked him, and Stewart and Sgt. Dula then used excessive force against Plaintiff [*Id.*].

Also in his complaint, Plaintiff states that he submitted "verbal, paper, and electronic grievances on [his] three claims to multiple guards," but these grievances "were ignored or out[]right refused to [him]" [*Id.* at 2]. Plaintiff also sets forth various allegations regarding him filing a paper grievance in his unsworn response in opposition to Cpt. Patterson, Sgt. Dula, and Stewart's motion for summary judgment.[2] However, the Court cannot consider this unsworn document for purposes of summary judgment. *Farr v. Centurion of Tenn., LLC*, No. 21-5094, 2022 WL 18457630, at *1 (6th Cir. Aug. 1, 2022) (noting that the "district court . . . properly declined to consider as evidence the allegations in [the plaintiff's] complaint and the arguments in his responses to the motions for summary judgment . . . because his complaint was not verified and his responses were not sworn or submitted under penalty of perjury").

---

[2] Specifically, in his unsworn response in opposition to Defendants' motion for summary judgment, Plaintiff again claims that he wrote a paper grievance to Sgt. Singletary about Inmate Berry, which he gave to Deputy Hamm [Doc. 21, p. 1]. Plaintiff also asserts in relevant part that he was on lockdown when Inmate Berry was moved into A block, which meant he could not access a kiosk to file an electronic grievance [*Id.*].

In support of their motion for summary judgment, Cpt. Patterson, Sgt. Dula, and Stewart filed the Jail's inmate handbook, which describes the Jail's separate procedures for inmates to file grievances and requests on an electronic kiosk [Doc. 14-1, pp. 1–3; Doc. 14-3, pp. 1–3]. The Jail's grievance procedure provides in relevant part that:

> The grievance form button is located on the menu page of the kiosk machine. The inmate must completely fill out the form and submit it electronically through the kiosk machine. Upon receipt of the grievance, the incident will be assigned to an officer for investigation and the findings forwarded to the Jail Administrator. The inmate should receive a response within ten (10) working days. If the grievance cannot be satisfactorily answered within ten days, he/she will receive a temporary response at that time. This response will explain the delay. When this occurs, the inmate will receive a response within thirty (30) days of submitting the grievance form.

[Doc. 14-3, p. 3]. The grievance procedure also includes an appeal process that it describes as follows:

> If an inmate is not satisfied with the response given, then the inmate may file a grievance appeal to the Sheriff or his designee within three (3) days of receipt of a response. The appeal can be filed electronically through the kiosk machine. The Sheriff or his designee has fifteen (15) days from the receipt of the appeal to reply to your appeal. The response from the Sheriff shall be the final step in the appeals process. The Sheriff will review all appeals of grievances and that response will be final.

[*Id*.]. According to Cpt. Patterson, Sgt. Dula, and Stewart, Plaintiff filed numerous requests and grievances in the Jail, including requests to obtain medical care for the incidents alleged in the complaint and documents for this litigation, but he never filed (1) a request or grievance alleging excessive force or a failure to protect or (2) an appeal of any grievance he filed [Doc. 14-1, pp. 3–4].

B. **Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

Failure to exhaust is an affirmative defense for which a defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Accordingly, when a defendant in a prisoner civil rights action moves for summary judgment on exhaustion grounds, he "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (citations and internal quotation marks omitted). Once a defendant has demonstrated that there was a generally available administrative remedy that the plaintiff did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (citation omitted); *see also Napier v. Laurel*

7

*Cnty.*, 636 F.3d 218, 225–26 (6th Cir. 2011) (finding once defendants put forth evidence of a valid administrative process, plaintiff must present evidence to rebut the availability of that remedy to defeat motion for summary judgment).

    C.    **Analysis**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA does not set out the requirements for exhaustion. Rather, to satisfy the exhaustion requirement, an inmate must properly complete the grievance procedures of his correctional institution, including any procedural rules and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving the grievance and follow the "'critical procedural rules'" in a manner that allows prisoner officials to review and, where necessary, correct the issues set forth in the grievance "'on the merits.'" *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Woodford*, 548 U.S. at 81, 95)).

As set forth above, the Jail's formal grievance process requires inmates to (1) electronically submit their grievances by using the "grievance form button" on the kiosk machine and (2) file an appeal of any unsatisfactory grievance response within three days of receiving that response, to which the Sheriff will issue a final response [Doc. 14-3, p. 3]. In his sworn complaint, Plaintiff states that he completed "verbal, paper, and electronic" grievances regarding the claims in his complaint, which jail officials either

8

ignored or "out[]right refused" [Doc. 2, p. 2]. Plaintiff also states that, while he was on lockdown, he filed a paper grievance telling Sgt. Singletary that Inmate Berry was still threatening to kill Plaintiff and asking Sgt. Singletary to ask Cpt. Patterson to change his mind and move Inmate Berry, which Plaintiff gave to Deputy Hamm to give to Sgt. Singletary, but "[Plaintiff] was ignored" [*Id.* at 4].

First, as to Cpt. Patterson, the Court can reasonably infer from Plaintiff's sworn allegations in his complaint that (1) Plaintiff was on lockdown when jail officials moved Inmate Berry into Plaintiff's unit; (2) Plaintiff requested that Cpt. Patterson move Inmate Berry out of his unit because of this inmate's prior incompatibility with Plaintiff and current threats to kill Plaintiff, but Cpt. Patterson refused that request; and (3) while Plaintiff was still on lockdown, Plaintiff submitted a paper grievance regarding Cpt. Patterson's refusal to move Inmate Berry from Plaintiff's unit that "was ignored" [*Id.* at 4]. The Sixth Circuit has found that where a prisoner properly files a grievance to which he does not receive a response, the prisoner is deemed to have exhausted that remedy. *Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004).

Accordingly, even though Defendants have filed sworn proof that the applicable grievance policy requires electronic grievances, given (1) the specificity of Plaintiff's sworn allegations regarding him filing a paper grievance about Cpt. Patterson's refusal to move Inmate Berry from Plaintiff's unit while he was on lockdown; (2) the lack of any proof in the record regarding the availability of the grievance kiosk to Plaintiff while he was on lockdown; and (3) the lack of any evidence in the record that Plaintiff could have appealed Sgt. Singletary's apparent failure to respond to Plaintiff's paper grievance under

9

the grievance policy, the Court declines to grant Cpt. Patterson summary judgment based on Plaintiff's alleged failure to exhaust his available administrative remedies at this time.

However, as to Sgt. Dula and Stewart, Plaintiff's conclusory and ambiguous statement that he completed "verbal, paper, and electronic grievances" regarding his claims would not allow a jury to reasonably find that he exhausted his available administrative remedies as to his claims against these defendants. Specifically, while Plaintiff states that he "did" electronic grievances for his claims, he does not provide any facts or documents indicating that he properly submitted any electronic grievances regarding Sgt. Dula and Stewart's alleged failures to protect him or uses of excessive force against him through the kiosk system in a manner that complied with the Jail's grievance procedure. Nor does Plaintiff provide any facts suggesting that this remedy was unavailable to him he was released from lockdown. And while Plaintiff also states that he completed verbal and paper grievances for his claims, he provides no facts that would allow a reasonable jury to find that he properly grieved his claims against Sgt. Dula and Stewart by completing each available step of the applicable grievance policy for these alleged grievances. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies . . ." ). And Sgt. Dula and Stewart have presented proof that they cannot locate documentation of any grievance or appeal from Plaintiff arising out of his claims against them [Doc. 14-1, pp. 1–3].

In short, Plaintiff's "conclusory allegation[] . . . and unsubstantiated assertion[]" that he "did" grievances regarding his excessive force and failure to protect claims against

10

Case 2:24-cv-00035-TAV-CRW   Document 25   Filed 05/13/25   Page 10 of 14
PageID #: 138

Sgt. Dula and Stewart "[is] not evidence, and [is] not sufficient to defeat [Sgt. Dula and Stewart's] well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017). Accordingly, Sgt. Dula and Stewart have met their burden of establishing the absence of any material fact regarding Plaintiff's failure to properly exhaust his administrative remedies for his excessive force and failure to protect claims prior to filing suit, and these Defendants are therefore entitled to summary judgment for these claims.

## III.   Nurse Waddill

Plaintiff has also brought claims against Nurse Waddill alleging that (1) she refused to give him a blood test after an inmate assaulted him and the inmate's blood got in his eyes and mouth, even though Plaintiff requested this test to be sure that he did not contract a disease from the inmate, and (2) he was charged for this medical appointment [Doc. 2, p. 6].[3] For the reasons set forth below, these claims will be **DISMISSED** because they fail to state a plausible claim for § 1983 relief.

### A.   Standard

District courts must screen prisoner complaints and shall, at any time, dismiss claims that are frivolous or malicious, fail to state a claim for relief, or are against a

---

[3] In the same portion of the complaint where he sets forth his claims against Nurse Waddill, Plaintiff also claims that he later sought medical care for other issues from another nurse but did not receive that care [*Id.*]. However, Plaintiff has not sued the nurse he names in these allegations, and he does not set forth any facts from which the Court can plausibly infer that Nurse Waddill or any other Defendant was personally involved in these incidents. Accordingly, these allegations fail to state a plausible § 1983 claim as to any named Defendant. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

11

defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Analysis

#### 1. Blood Test

Because Plaintiff presumably was a pretrial detainee at the time of the incident underlying his complaint, the Court analyzes his claim alleging that Nurse Waddill denied him a blood test he requested under the Fourteenth, rather than the Eighth, Amendment. *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021). Under the

12

Fourteenth Amendment, pretrial detainees cannot be subjected to punishment prior to a determination of guilt. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'") (citation omitted). Accordingly, for Plaintiff's complaint to state a plausible claim that Nurse Waddill violated his Fourteenth Amendment rights by failing to provide him with a blood test, Plaintiff must set forth facts from which the Court can infer that (1) he had a sufficiently serious medical need, and (2) Nurse Wadill "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citations omitted).

Plaintiff has not set forth any facts from which the Court can plausibly infer that Nurse Waddill knew or should have known that the inmate's blood to which he was exposed presented an unjustifiably high risk of harm to Plaintiff. As such, Plaintiff's allegation that Nurse Waddill refused to provide him with the blood test he requested fails to state a plausible claim for violation of his Fourteenth Amendment rights.

### 2. Charge

Plaintiff's allegation that he was charged for his visit with Nurse Waddill also does not state a claim for violation of § 1983. First, Plaintiff does not allege that this Defendant was personally involved in charging him. *Frazier*, 41 F. App'x at 764. But even if Plaintiff alleged that Nurse Waddill personally charged him, this does not rise to the level of a violation of Plaintiff's constitutional rights. *See Bailey v. Carter*, 15 F. App'x 245, 2001 WL 845446 (6th Cir. July 20, 2001) (holding policy requiring payment for medical

13

services, where funds are available, does not violate an inmate's constitutional rights); *Jones v. Clark Cnty.*, 666 F. App'x 483, 486 (6th Cir. 2016) (affirming dismissal of inmate's allegation that a jail had billed him for the costs of his incarceration without prior process, concluding that mere billing does not implicate due process rights); *Sickles v. Campbell Cnty.*, 501 F.3d 726, 730–32 (6th Cir. 2007) (holding due process is not violated when funds are withheld from an inmate's account for booking and housing costs). Accordingly, this allegation also fails to state a claim upon which relief may be granted under § 1983.

## IV. CONCLUSION

For the reasons set forth above:

1. Cpt. Patterson, Sgt. Dula, and Stewart's motion for summary judgment [Doc. 14] is **DENIED without prejudice** as to Cpt. Patterson and **GRANTED** only as to Sgt. Dula and Stewart;

2. Nurse Waddill is **DISMISSED**; and

3. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE